Filed April 10, 1885.

---

No. 11,928.

## BROWN ET AL. *v.* BROWN.

ADOPTION OF CHILDREN.—*Order of Court.—Fraud of Adoptive Child.*—A complaint seeking to have an order of court granting the prayer of a petition for the adoption of a child, and containing the averment, "that at the time of said adoption said defendant" (the adoptive child) ." was eighteen years of age, and knew that said Preston Brown" (the adoptive father) "was a person of unsound mind, and that so knowing, and for the purpose of becoming the heir of said Preston Brown, and securing the property of said Brown, he gave his consent to said adoption, and permitted said adoption be made," does not show such fraud as will vitiate the order of the court.

SAME.—*Judgment Ordering Adoption.—Collateral Attack.*—A judgment of a court of competent jurisdiction, ordering the adoption of a child, fixes its status, is conclusive, and can not be collaterally attacked.

SAME.—*Insanity of Adoptive Father.*—A judgment upon the petition of a person of unsound mind, praying the adoption of a child, is not void, and can only be set aside for cause.

SAME.—*Remedy of Natural Heirs.—Equity.—Diligence.*—Where natural heirs seek to set aside an order for the adoption of a child, their remedy is in equity; they must proceed promptly, and a delay of ten years will be fatal to their suit.

From the Hendricks Circuit Court.

*T. J. Cofer, N. M. Taylor* and *J. H. Johnson,* for appellants.
*L. M. Campbell,* for appellee.

ELLIOTT, J.—The material facts stated in the first paragraph of appellants' complaint are these: In May, 1873, Preston Brown asked and obtained an order of the Hendricks Circuit Court for the adoption of Edgar Boyd, and, in the same order, it was directed that the name of the child be changed to Edgar B. Brown. Preston Brown, the adoptive father, died in August, 1880, the owner of real and personal property, leaving no widow or natural children. The appellants are his brothers and sisters, and claim the property as his heirs. In April, 1883, they gave notice that they disaffirmed the proceedings adopting the appellee, on the ground that Preston Brown was of unsound mind at the time the proceedings were had.

The second paragraph of the complaint is essentially the same as the first, except that it undertakes to charge fraud on the part of the appellee. The charge is embodied in this language:

"Plaintiffs further say that the defendant had lived with said Preston Brown for several years immediately before, and was living with him at the time, the said pretended adoption was made, and that he well knew that the said Preston Brown was then a person of unsound mind; that at the time of said adoption said defendant was eighteen years of age, and knew that said Preston Brown was a person of unsound mind, and that so knowing, and for the purpose of becoming the heir of said Preston Brown, and securing the property hereinbe-

fore mentioned before said adoption was made, he gave his consent to said adoption, and permitted said adoption to be made."

In our opinion, the two paragraphs are substantially the same, for the second does not contain a valid charge of fraud. The silence of the minor did not operate as a fraud upon the court. It is by no means every wrongful act of a litigant that will authorize the overthrow of a judgment. It is quite well settled that fraud will vitiate a judgment only when it is affirmatively shown that it was practiced upon the court. Pomeroy Eq. Jur., section 919; Freeman Judg., section 492; Bigelow Fraud, 170.

It is not necessary to inquire, or decide, what acts will constitute a fraud upon the court, for it does not appear that any fraudulent act at all was done. No obstacle to a full and free investigation was interposed, no deception was practiced, no artifices were resorted to, nor was anything done that misled either the court or the petitioner. The sum and substance of the averment is that the infant remained passive in the hands of the court. The court had ample authority to make a full and complete investigation, and, in the absence of averments to the contrary, we must presume that this investigation was made, and that the court satisfied itself that the petitioner was a proper person to adopt Edgar Boyd. The child has, in such cases as this, no part in the proceeding; the whole matter rests with the court, and it is for the court to make such an investigation as it deems proper. It can not be justly said that the silence of the child can operate to its prejudice, for it is the ward of the court, and the court is charged with the duty of making due inquiry before rendering a judgment consigning it to an adoptive father.

The judgment of the court fixes the legal status both of the adoptive parent and the child. *Paul* v. *Davis*, 100 Ind. 422; *Humphries* v. *Davis*, 100 Ind. 274. A judgment of a court fixing the status of a person, rendered in a matter where it has jurisdiction and upon the notice required by law, is con-

clusive as against all collateral attacks by parties or their privies. This rule finds the most frequent illustration in those cases, and there are many of them, which hold that where a person is, in the manner provided by law, adjudged to be insane, the judgment is conclusive against parties and privies. This is so only where the law provides that the judgment shall fix the status, and is not so where the inquiry is for another purpose. *Goodwin* v. *State*, 96 Ind. 550. In the present case, the prime object of the proceeding for the adoption of a child is to fix its legal status, and it would be subversive of all principle to hold that the judgment in such a case could be set aside without due cause shown. Little good would be accomplished by such a proceeding if it were regarded as a mere matter of form.

A judgment against an insane person, as Mr. Freeman says, "is neither void nor voidable." Freeman Judg., section 152. The proper remedy in such cases is "to apply to chancery." The remedy of a person who asserts that an order directing the adoption of a child is invalid, because of the mental incapacity of the adoptive father, is in equity. This is the remedy in all cases of a kindred character (*Nealis* v. *Dicks*, 72 Ind. 374), and unquestionably is the remedy in such a case as the present. The appellants are, therefore, prosecuting an equitable suit. Their appeal is to the equity powers of the court, and it devolves upon them to affirmatively show that they have been prompt and diligent. Equity requires diligence from suitors. *City of Logansport* v. *LaRose*, 99 Ind. 117; *City of Logansport* v. *Uhl*, 99 Ind. 531. This rule operates in this instance to bar the successful prosecution of this suit. The unexplained delay of more than ten years prevents the maintenance of such a suit as this. It would be unjust and unwise to permit a child to discharge the duties of that relation to an adoptive father for that peried of time and then permit brothers and sisters of the adoptive father to come in and take from the child all his rights as heir. If parties desire to contest the mental capacity of a kinsman to

adopt a child, they must proceed with diligence, and not delay until witnesses have died, have moved away, or have forgotten the matter. It would open the way to the most flagrant abuses to permit a judgment fixing the status of a child to be vacated after such a long lapse of time, and it would also encourage, what equity abhors, sloth and negligence. There was no error in sustaining the demurrer to the complaint.

Judgment affirmed.

Filed April 7, 1885.